IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

OTIS HOLDER                                                          PLAINTIFF

v.                        Civil No.10-2120

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                         DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Otis Holder, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**     **Procedural Background:**

The plaintiff filed his application for DIB and SSI on April 1, 2008, alleging an onset date of March 11, 2008, due to coronary artery disease status post stinting, chronic chest pain, degenerative arthritis with lower back pain, obesity, diabetes mellitus, history of ischemic heart disease, and depressive disorder. Tr. 115-117. An administrative hearing was held on April 14, 2009. Tr. 25-56. Plaintiff was present and represented by counsel. At this time, plaintiff was 49 years of age and possessed an eighth grade education. Tr. 27. He had past relevant work ("PRW") experience as a tractor trailer truck driver. Tr. 23.

On February 12, 2010, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's coronary artery disease status post stenting with chronic chest pain, degenerative arthritis with lower back pain, diabetes mellitus, history of ischemic heart disease, and depressive disorder did not meet or equal any Appendix 1 listing. Tr. 18-19. The ALJ determined that plaintiff maintained the residual functional capacity ("RFC") to perform sedentary work. Tr. 19-22. With the assistance of a vocational expert, the ALJ then found that plaintiff could return to his PRW as a telephone installer, telephone coin collector, and rental car delivery driver. Tr. 16.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on June 11, 2010. Tr. 1-5. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 9, 10.

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742,

747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

    **A.**    <u>**The Evaluation Process**</u>:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age,

3

education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.    Discussion**:

We are bothered by the ALJ's failure to properly consider all of the medical evidence in this case. *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (holding that the ALJ is not free to ignore medical evidence, rather must consider the whole record). She provides no real medical support for her determinations and fails to properly explain her reasoning for weighting the evidence in the manner it was weighed. *See Holmstrom v. Massanari,* 270 F.3d 715, 720 (8th Cir. 2001)(The ALJ must give good reasons for whatever weight he gives the treating physician's opinion). Further, in spite of medical assessments and evidence indicating that Plaintiff was limited to occasional climbing, stooping, crouching, and crawling, the ALJ concluded Plaintiff could perform a full range of sedentary work. Tr. 801-806. *See Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992) (holding that sedentary work involves occasional stooping).

A reading of the ALJ's decision also reveals many contradictions between her findings and the medical evidence of record. For instance, she concludes that Plaintiff suffered from no diabetic complications, yet the medical evidence makes clear that he was experiencing foot pain which had been attributed to diabetic neuropathy. Tr. 635, 880-886. In fact, a diagnostic study of Plaintiff's segmental limb pressure conducted on May 4, 2009, was also suggestive of some degree of obstruction in both legs below the thigh. Tr. 825-826. Plaintiff's diabetes was also noted to be uncontrolled on numerous occasions throughout the relevant time period. Clearly, Plaintiff was suffering from some complications related to his diabetes. And, it is equally clear

that these complications could have an impact on Plaintiff's ability to perform work-related activities.

After stating that Plaintiff had no diabetic complications, the ALJ also attempted to dismiss his diabetes complaints by relying on his admission that he had been somewhat noncompliant with his diabetic diet. We note, however, as did the ALJ, that Plaintiff and his wife lived in a tent, had no money, and were receiving government assistance in the form of food stamps. As such, it is clear to the undersigned that Plaintiff may not have been financially able to purchase the foods that are endorsed by the American Diabetic Association. Whole fruits, vegetables, products containing whole grains rather than white flower, and low carbohydrate foods are generally far more expensive than other foods. This can place a financial strain on a person suffering from diabetes, as these are the foods endorsed by the American Diabetic Association and incorporated into the recommended diet. It is also possible that Plaintiff's limited education prevented him from understanding the true nature of his impairment and the necessity of following such a strict diet. As such, we believe the ALJ erred in failing to thoroughly investigate Plaintiff's reasons for noncompliance. *See Tome v. Schweiker*, 724 F.2d 711, 713-714 (8th Cir. 1984)(holding that failure to follow prescribed treatment can be excused where evidence shows Plaintiff did not consciously decide not to follow doctor's orders, but rather lacked the financial resources and the discipline and education needed to understand and follow a strict dietary and insulin regimen).

The ALJ also states that no physical findings were noted that would substantiate Plaintiff's subjective complaints of pain. However, the consultative evaluation of Dr. Mohammed Quadeer revealed tenderness at the L4-5 level with pain on range of motion and

muscle spasm. Tr. 597-600. X-rays of his lower back revealed mild multi-level degenerative disk disease at the L4-5 level with no significant stenosis and no nerve root impingement. Additional x-rays of Plaintiff's lumbosacral spine conducted in July 2008 and April 2009, showed mild degenerative changes, transitional vertebra at the lumbosacral junction associated with bilateral pars defect (stress fractures), and a very mild curvature of the spine convex to the left with small endplate osteophytes at several levels. Tr. 811, 813. An MRI of his lumbar spine dated May 5, 2009, showed short pedicles that contributed to mild to moderate canal stenosis[1] at the L4-5 level and borderline canal stenosis at the L3-4 level. Tr. 810. We find that this evidence clearly supports Plaintiff's complaints of pain. *Beckley v. Apfel,* 152 F.3d 1056, 1059 (8th Cir. 1998) (holding that MRI's, CT scans, and other tests supported Plaintiff's subjective complaints of pain). This evidence also raises some questions concerning Plaintiff's ability to stoop, crouch, bend, and crawl, which was not addressed by the ALJ.

Further, the ALJ contends that Plaintiff's cardiac condition was stable via medication. We note, however, that a stress test conducted on November 7, 2008, was positive for ischemia. Tr. 852-855. Exercise was stopped due to fatigue after reaching the target heart rate. Further follow-up with either cardiac catheterization or nuclear stress testing was recommended. Tr. 852-855. This stress test was conducted after Plaintiff underwent a stent placement procedure in March 2008. While the fact that Plaintiff's condition was responsive to medication is something the ALJ may consider, the fact that Plaintiff continued to experience ischemia is

---

[1] Lumbar spinal stenosis is the narrowing of the lumbar spinal canal, which puts pressure on the sciatic nerve roots or the spinal cord. *See* Sally Pullman, Mooar, M. D., *Lumbar Spinal Stenosis*, *at* www.merckmanuals.com (June 6, 2011). It causes positional back pain, symptoms of nerve root compression, and lower-extremity pain during walking or weight-bearing activities. *Id.*

equally as important, as this could still impact the Plaintiff's ability to perform certain types of activities. It appears from our reading of the ALJ's opinion that she gave little consideration to the fact that Plaintiff continued to experience ischemia, and focused instead on the availability to Nitroglycerine to treat it. Further, she did not consider whether Plaintiff's heart condition met or equaled Listing §4.04A1. In addition, the ALJ failed to consider whether Plaintiff's blood pressure ratio in the arm and toe met or equaled the listing, as his resting brachial artery reading was .43 while listing §4.12D required a .40. In fact, she did not even mention this evidence at all. As this does come close to meeting the listing, we believe it warranted some discussion.

The ALJ also attempted to use Plaintiff's statements regarding his wish to return to work in July 2007 to discredit his complaints of disability beginning in March 2008. We note, however, that this was almost one year prior to Plaintiff's alleged onset date in this case. And, at this time, Plaintiff had been told that he had no cardiac obstruction and was not a surgical candidate. Tr. 352-438, 455-457. However, in March 2008, it was determined that Plaintiff was actually suffering from claudication of the leg and coronary artery disease necessitating stent placement to the right coronary artery and right common iliac. Tr. 447-450, 492-495. Further, on April 2, 2008, Dr. Roger Youmans wrote a letter indicating that Plaintiff was under his care for diabetes, heart disease, and back pain. Tr. 891. He felt it would not be in Plaintiff's best interest to return to truck driving. Tr. 891. Clearly, the ALJ failed to consider valuable evidence concerning Plaintiff's level of impairment.

Because the ALJ failed to properly consider all of the medical evidence of record, we believe that remand is necessary to allow Plaintiff a full and fair review of the evidence. On remand, the ALJ should consider all 891 pages of the administrative transcript and cite to

medical records dated during the relevant time period to support his/her determinations. A supplemental hearing should also be held, with specific questions asked concerning Plaintiff's financial situation and his ability to comply with the diabetic diet prescribed.

On remand, the ALJ should also obtain an RFC assessment from one of Plaintiff's treating doctors to help in determining Plaintiff's true physical and mental limitations.

**IV.**  **Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 6th day of June 2011.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)